UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AYYAKKANNU MANIVANNAN, | : | CIVIL NO. 4:21-CV-01359 |
| | : | |
| Plaintiff, | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| COUNTY OF CENTRE, | : | |
| PENNSYLVANIA, *et al*., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, a scientist at the Department of Energy's ("DOE") National Technology Laboratory, contends that the defendants violated his constitutional rights throughout the duration of his prosecution for harassing and stalking one of his former interns. Currently pending are motions to dismiss the plaintiff's complaint filed by all of the defendants. For the reasons that follow, we recommend granting the motions in part and denying the motions in part.

### II. Background and Procedural History.

On August 4, 2021, the plaintiff, Ayyakkannu Manivannan ("Manivannan"), proceeding pro se, began this action by filing a complaint. *Doc. 1*. In his

complaint, Manivannan alleges that the defendants deprived him of his constitutional rights while he was being prosecuted for harassing and stalking an intern at the DOE. *Doc. 30* at 1.  Manivannan names the County of Centre ("Centre County"), Assistant District Attorney Megan McGoron ("McGoron"), the Pennsylvania State University ("PSU"), PSU police officer Jessica Meyer ("Officer Meyer"), Faith Beck ("Beck"), and Parthra Mishra ("Mishra") as defendants (collectively the "defendants"). *Doc. 30* at 2.  Manivannan also refers to defendants McGoron, Officer Meyer, Beck, and Mishra as the "Individual Defendants." *Id.*  On December 13, 2020, Manivannan filed an amended complaint. *Doc. 30.*  In his amended complaint, Manivannan alleges the following.

Per Manivannan, Beck was working as an intern under his supervision at the DOE in 2014. *Doc. 30* at ¶ 11.  As part of this work, Manivannan and Beck communicated regularly by telephone and email. *Id.*  On January 30, 2014, Beck visited a police station at PSU and told Officer Meyer that Manivannan was harassing her by excessively communicating with her, and that Manivannan had once appeared at PSU and chased Beck and her boyfriend in a car. *Id.* at ¶ 12.  Moments after leaving the police station, Beck called Manivannan on the phone to discuss their work. *Id.* at ¶ 13.  At this time, Manivannan had no idea that Beck had claimed that she wanted to stop communicating with him. *Id.*  A few hours later, Beck wrote Manivannan several emails asking him to write her a letter of

2

recommendation. *Id* at ¶ 14.  On January 31, 2014, Beck wrote an email to Manivannan telling him to contact her by email instead of telephone about work matters. *Id.*  Beck wrote a second email to Manivannan six minutes later profusely apologizing for the prior email and asking Manivannan to call her to discuss their research work and her request for a letter of recommendation. *Id.*  After January 31, 2021, Manivannan and Beck communicated regularly about their research work by phone and email. *Id* at ¶ 15.

On February 8, 2014, Officer Meyer obtained Manivannan's telephone number. *Id.* at ¶ 16.  The next day, Beck told Officer Meyer that she had sent Manivannan an email asking him not to contact her anymore. *Id* at ¶ 17. Manivannan contends that these emails did not make such a request and that Beck withheld the apology email she sent shortly after. *Id.*  On July 20 and July 21, 2014, Beck and Mishra provided Officer Meyer with screenshots of falsified internet provider ("IP") addresses which were used to "hack" Beck's email account. *Id* at ¶¶ 18-19.  Manivannan avers that this was done with the intention of causing the police to prosecute Manivannan.  *Id.* at ¶ 19.

Officer Meyer then obtained information from Comcast, an internet service provider linked to one of the provided IP addresses, connecting Manivannan to one of the IP addresses appearing on the alleged fake screenshots. *Id.* at ¶¶ 20-21. Upon receiving the information of this link, Officer Meyer promptly abandoned

her efforts to obtain information about the other IP addresses appearing on the alleged fake screenshots. *Id* at ¶ 21.  Officer Meyer then set out to charge Manivannan with stalking and harassment. *Id.*

On October 31, 2014, Officer Meyer's supervisor instructed her to contact Manivannan to inquire about whether he had ever accessed Beck's email. *Id* at ¶ 22.  Officer Meyer never contacted or attempted to contact Manivannan. *Id.* Officer Meyer wrote in several police reports that she was unable to obtain Manivannan's phone number, but Manivannan avers that this was false since Meyer had Manivannan's contact information for months prior. *Id.*  On February 9, 2015, Beck sent an email to PSU police attaching (1) an excel spreadsheet purporting to show phone calls from Manivannan to Beck; (2) a PDF document of supposed emails between Manivannan and Beck; and (3) a PDF document showing a printout of text messages Beck claimed to have been exchanged between her and Manivannan. *Id.* at ¶ 23.  Manivannan claims that Beck fabricated all of this information with the intention of prosecuting Manivannan. *Id.*  On March 19, 2015, Centre County charged Manivannan with one count of harassment by communication under 18 Pa. C.S. § 2709 (a)(7) and one count of stalking under 18 Pa. C.S. § 2709.1(a)(2). *Id* at ¶ 25.  On December 10, 2015, Manivannan was charged with five felony counts of unlawful use of a computer. *Id.* at ¶ 27.

4

After Manivannan was charged, Officer Meyer obtained information from Verizon and Google (internet service providers of other provided IP addresses), which showed that Beck had fabricated the evidence that she provided to police. *Id.* at ¶ 28.  McGoron and Officer Meyer ignored this new evidence and proceeded with the prosecution. *Id.*  Manivannan alleges that McGoron and Officer Meyer intentionally withheld this exculpatory evidence during the criminal proceedings. *Id* at ¶¶ 28-29.  Additionally, Manivannan claims that McGoron deliberately used a falsified certificate of authentication during the criminal proceedings to improperly admit into evidence a letter that the prosecution obtained from Comcast purporting to link Manivannan with one of the IP addresses on the alleged fake screenshots. *Id.* at ¶ 30.  Further, Manivannan asserts that both Beck and Mishra testified at trial providing intentional falsehoods regarding their dealings with Manivannan. *Id.* at ¶ 31.  On April 19, 2016, Manivannan was convicted of harassment and unlawful use of a computer charges; however, he was acquitted of the stalking charge. *Id*. at ¶ 32.  On May 4, 2018, the Pennsylvania Superior Court vacated the criminal convictions against Manivannan. *Id* at ¶ 33.[1]  The case was remanded to the trial

---

[1] The Pennsylvania Superior Court reverse and remanded for a new trial because:

> [T]he trial court abused its discretion in permitting Ms. Beck, Mr. Mishra, and Officer Meyer to draw conclusions from the information in Ms. Beck's email account settings that depicted multiple instances of disparate IP addresses accessing her account from approximate geographic locations.  Any such

court, where the prosecution voluntarily dismissed all criminal charges against Manivannan with prejudice on August 6, 2019. *Id.* at ¶ 35.

Manivannan asserts eight separate counts in his amended complaint. *Doc. 30.* In count one, Manivannan contends that defendants McGoron and Officer Meyer maliciously prosecuted him in connection with the harassment and stalking charges. *Id.* at 14. Manivannan argues that each of these officials acted with the malicious intent to bring Manivannan to justice despite not having probable cause or reliable information to do so. *Id.*

In count two, Manivannan argues that defendants McGoron and Officer Meyer deprived him of liberty without Due Process of Law, denied him a fair trial by fabricating evidence, withheld exculpatory evidence, and deliberately failed to conduct a constitutionally adequate investigation. *Id.* at 17. This claims stems from Officer Meyer's lack of further investigation into the veracity of the

---

information and conclusions drawn therefrom required expert testimony, and its admission via lay testimony was therefore improper. We also agree with Appellant that, without establishing the affiliation between IP addresses and real-world physical locations, the Commonwealth would not have been able to prove Appellant's unlawful use of computer convictions. Accordingly, Appellant suffered prejudice from improperly admitted evidence. For that reason, again, we must reverse and remand for a new trial.

*Commonwealth. v. Manivannan*, 186 A.3d 472, 488-89 (Pa. Super. 2018) (internal citations omitted).

information which she was provided by defendants Beck and Mishra. *Id.* Manivannan contends that this information was used by Officer Meyer and McGoron at his trial to deprive him of his liberty. *Id.*

In count three, Manivannan claims that McGoron and Officer Meyer conspired against Manivannan to maliciously prosecute him and deprive him of his liberty. *Id.* at 18.  Manivannan contends that Officer Meyer and McGoron acted in concert and committed overt acts in connection with a civil conspiracy against Manivannan in hopes of depriving him of his constitutional rights. *Id.* at 18-19.

In count four, Manivannan brings a claim for failure to intervene against McGoron and Officer Meyer. *Id.* at 19.  Manivannan asserts that both McGoron and Officer Meyer had opportunities to intervene on his behalf but failed to do so. *Id.* at 19-20.

In count five, Manivannan claims that the policies and practices implemented by Centre County were the direct cause of Manivannan being maliciously prosecuted. *Id.* at 20.  Manivannan argues that these policies were the driving force behind him being wrongfully prosecuted and deprived of his constitutional rights. *Id.* at 20-22.

In count six, Manivannan claims that the procedures and trainings administered by PSU were also a direct cause of his wrongful prosecution. *Id.* at 22-23.   Manivannan claims that these practices led Officer Meyer to conduct her

investigation in the manner which she did, which Manivannan claims is constitutionally inadequate. *Id.* at 23-25.

In count seven, Manivannan asserts a Pennsylvania state-law malicious prosecution claim against Officer Meyer, McGoron, Beck, and Mishra for their handling of the prosecution of Manivannan for harassment and stalking. *Id.* at 25-26.

In count eight, Manivannan asserts a Pennsylvania state-law civil conspiracy claim against Officer Meyer, McGoron, Beck and Mishra, alleging that these defendants conspired to have Manivannan wrongly prosecuted. *Id.* at 26-27.

## III. Motion to Dismiss Pro Se Complaint—Standard of Review.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v.*

9

*Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but his complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief." *Beasley v. Howard*, No. 20-1119, 2021 WL 4233947, at *2 (3d

Cir. Sept. 17, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   But "[a] claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the elements of a cause of action' without supporting factual allegations, does not establish plausible grounds for relief." *Id.* (quoting *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Discussion.

### A. Manivannan's claims are not time-barred.

In their respective briefs, Officer Meyer, McGoron, PSU, and Centre County all argue that Manivannan's malicious prosecution claims are time-barred. Specifically, they argue that once the Pennsylvania Superior Court terminated his conviction and remanded the matter for retrial on May 4, 2018, the clock began

11

ticking for the two-year statute.  Thus, the defendants argue that Manivannan had until May 4, 2020, to file his complaint; however, his complaint was filed on August 4, 2021.

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Pennsylvania, the applicable state in this case, mandates a two-year statute of limitations for personal injury claims. 42 Pa.C.S.§ 5524(2).  Thus, a § 1983 claim arising in Pennsylvania is subject to a two-year statute of limitations. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985).

A § 1983 cause of action "'accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Dique*, 603 F.3d at 185-86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).  In other words, the cause of action accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (citations omitted).  Thus, "[u]nder federal law, a cause of action accrues ""'when the plaintiff knew or should have known of the injury upon which the action is based.'"" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009), which in turn was quoting *Sameric Corp. v. City of Philadelphia,* 142 F.3d 582,

12

599 (3d Cir.1998)).  "The 'technical prerequisite is only that the particular prosecution be disposed of in such a manner' that it 'cannot be revived.'" *Id.*; *Clark v. Cleveland*, 6 Hill 344, 347, n. a (1844); *Bacon v. Waters,* 84 Mass. 400, 401-402 (1861); M. Newell Law of Malicious Prosecution 327-328 (1892) (Newell).

Here, the point when the statute of limitations for Manivannan's § 1983 claims began to run was on August 6, 2019, when the prosecution voluntarily dismissed all criminal charges against him, not when the Pennsylvania Superior Court vacated his conviction and remanded for a new trial. *See Munchinski v. Solomon*, No. 2:05-cv-01125, 2006 WL 8457124, at *4 (W.D. Pa. Aug. 16, 2006) ("[O]ur circuit has held that a § 1983 cause of action accrues only when the conviction is dismissed outright without an order for a retrial.") (citing *Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996) (finding that a § 1983 cause of action accrues once the conviction is dismissed outright); *see also Williams v. Brown*, No. 96-cv-7450, 1997 WL 617032, at *4 (Sept. 30, 1997) ("Because one element of malicious prosecution is a termination of the proceedings in the Plaintiff's favor, the statute of limitations in malicious prosecution claims, and related conspiracy claims, begin to run when the underlying criminal proceedings have been terminated in the plaintiffs favor … [a]ctions are thus timely when filed within two years from the date of acquittal, reversal by a higher court (with retrial barred), or a

dismissal of criminal proceedings." (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 194 (3d Cir. 1984)).  Thus, because the prosecution did not dismiss the charges until August 6, 2019, and Manivannan filed his complaint on August 4, 2021, his malicious prosecution claims are not time-barred.

Additionally, as it relates to count two of Manivannan's amended complaint, we note that "[t]he favorable termination doctrine applies to malicious prosecution, as well as fabrication of evidence claims." *Jones v. Grill*, No. 21-cv-1846, 2021 WL 1924084, at *3 (E.D. Pa. May 12, 2021) (citing *McDonough v. Smith*, 139 S. Ct. 2149, 2155-59 (2019)).  And because we have already determined that Manivannan did not receive a favorable termination until August 6, 2019, it follows that his fabrication of evidence claim is also not time barred.  Considering our finding that his malicious prosecution and fabrication of evidence claims are not time barred, it is not clear from the face of the amended complaint, nor is it argued by the defendants, how any of Manivannan's remaining claims are time barred.  Thus, we find that none of Manivannan's claims are time barred, and we recommend denying the motions to dismiss on that basis. *See Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006) (noting that when raising a statute of limitations defense, it must be clear from the face of the complaint that the claim is time-barred).

**B. McGoron is not entitled to Absolute Immunity.**

McGoron argues that she is entitled to absolute immunity. "The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020). "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware,* 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)). There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled to only qualified immunity, public officials who perform '"special functions"' are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti,* 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz,* 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor

encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008).  "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991).  Thus, for example, a prosecutor is entitled to absolute immunity from a claim based on a prosecutor "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina,* 522 U.S. at 129.  Absolute immunity does not, however, apply "'to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Weimer v. Cty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Odd*, 538 F.3d at 208).

"Determining the precise function that a prosecutor is performing is a fact-specific analysis." *Fogle*, 957 F.3d at 160.  "And while '[i]t is tempting to derive bright-line rules' from the Supreme Court's jurisprudence, [the Third Circuit has]

16

'cautioned against such categorical reasoning' to 'preserve the fact-based nature of the inquiry.'" *Id*. (quoting *Odd*, 538 F.3d at 210).  The prosecutor bears the heavy burden of demonstrating that he or she is entitled to absolute immunity for the acts giving rise to the plaintiff's cause of action. *Id*.  To demonstrate that he or she is entitled to absolute immunity "at the motion-to-dismiss stage, 'a defendant must show that the conduct triggering absolute immunity clearly appear[s] on the face of the complaint.'" *Weimer*, 972 F.3d at 187 (quoting *Fogle*, 957 F.3d at 161).

Here, it is not clear form the face of the amended complaint that McGoron is entitled to absolute immunity.  McGoron argues that she is entitled to absolute immunity, as it relates to count one, count two, count three, and count four because her "actions/inaction on the face of the Amended Complaint fall directly within the protections afforded to an assistant district attorney through the absolute prosecutorial immunity." *Doc. 35* at 11.  Manivannan contends that McGoron is not entitled to absolute immunity because her acts were investigatory. *Doc. 46* at 23.  Specifically, Manivannan argues that "the complaint explains that McGoron wrongly obtained and then concealed information she obtained from DOE in violation of the Privacy Act." *Id*.  Additionally, Manivannan argues that "McGoron also acted as an investigator when she advised Meyer during the time that Meyer communicated with Beck about Manivannan." *Id*.

17

We note that "when prosecutors perform investigatory functions, like determining whether there is probable cause …, they are entitled only to qualified, and not absolute immunity." *Walker v. Clearfield County DA*, 413 Fed. App'x. 481, 483 (3d Cir. 2011).  Additionally, "[an] ADA may not be entitled to absolute immunity (but may be entitled to qualified immunity after discovery) for pre-arrest advice and for their involvement with the detectives' actions taken regarding … [an] arrest." *Stevens v. Sullum*, No. 3:20-cv-1911, 2021 WL 134385, at *3 (M.D. Pa. Jan. 14, 2021) (citing *Spiker v. Allegheny Co. Bd. Of Prob & Parole*, 920 F. Supp. 2d 580, 600 (W.D. Pa. 2013)).  Indeed, "the Supreme Court [has] held absolute immunity does not extend to the prosecutorial function of giving advice to the police prior to an arrest or indictment." *Spiker*, 920 F. Supp. 2d at 600 (citing *Burns*, 500 U.S. at 496).

Here, based on Manivannan's amended complaint, it is unclear when McGoron exactly interacted with the DOE and when she advised Officer Meyer. The amended complaint states that, on March 19, 2015, Manivannan was charged with one count of harassment by communication under 18 Pa. C.S. § 2709 (a)(7) and one count of stalking under 18 Pa. C.S. § 2709.1(a)(2). *Doc. 30* at ¶ 25.  On December 10, 2015, Manivannan was also charged with five felony counts of unlawful use of a computer. *Id.* at ¶ 27.  Manivannan claims that "throughout 2015, a Centre County Assistant District Attorney, Megan McGoron, improperly

18

colluded with attorney-advisor Mark Hunzeker and others at the Department of Energy to obtain records of the Department of Energy in violation of the Privacy Act of 1974." *Id.* at ¶ 26.  Construing Manivannan's allegation as true, we cannot conclude when in 2015 McGoron conducted these alleged investigatory actions against Manivannan, and thus, we cannot determine if it was before or after the filing of charges.  And because the defendant "bears a heavy burden to demonstrate entitlement to absolute immunity," we cannot conclude, at this stage, that McGoron is entitled to absolute immunity.[2] *Church of Universal Love & Music v. Fayette County*, 892 F. Supp. 2d 736, 751 (W.D. Pa. Aug. 31, 2012) (quoting *Malone*, 538 F.3d at 207-08).

### C. Manivannan's federal and state law malicious prosecution claims.

Manivannan asserts both a 42 U.S.C. § 1983 claim against Officer Meyer and McGoron, and a state law malicious prosecution claim against Officer Meyer, McGoron, Beck, and Mishra.  A claim for malicious prosecution under both federal and Pennsylvania state law requires a plaintiff to plead: (1) the defendants

---

[2] McGoron also argues, as it relates to count seven and count eight, that because these are state law claims, she is entitled to high public official immunity. *Doc. 35* at 16-17 (citing *Durham v. McElynn*, 772 A.2d 68, 70 (Pa. 2001)).  Yet, McGoron's argument for high public official immunity is predicated on the same points as her absolute immunity arguments.  Accordingly, because we find that McGoron is not entitled to absolute immunity at this stage, she has not demonstrated that she is entitled to high public official immunity as it relates to count seven and count eight of Manivannan's amended complaint.

initiated a criminal proceeding; (2) the criminal proceedings ended in plaintiff's favor; (3) the proceedings was initiated without probable cause[3]; and (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. *Donahue v. Gavin*, 280 F.3d 371 (3d Cir. 2002); *Kossler v. Crisanti*, 564 F.2d 181, 186 (3d Cir. 2009).

### 1. Manivannan's malicious prosecution claims against McGoron and Officer Meyer.

Officer Meyer argues that she did not initiate the prosecution, and that in most cases, it is the prosecutor who initiates the criminal proceedings.[4] *Doc. 44* at 20. (citing *Harris v. City of Phila.*, No. 97-cv-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998)).  It is true that "[i]n most circumstances, a plaintiff cannot establish the initiation element of a malicious prosecution claim against a police officer because prosecutors, rather than police officers, initiate criminal proceedings." *Arnold v. City of Phila.*, No. 16-cv-4103, 2017 WL 6497321, at *8 (E.D. Pa. Dec. 19, 2017) (citing *O'Connor v. City of Phila.*, No. 05-cv-02879, 2006 WL 1490134, at *7 (E.D. Pa. May 26, 2006)).  We note, however, that a

---

[3] Probable cause exists if "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

[4] We note that Officer Meyer does not argue that she is not a state actor for purposes of liability under § 1983.

court "may find that a police officer initiated a criminal proceeding 'if the officer knowingly provided false information to the prosecutor or otherwise prevented the prosecutor from making an informed decision to prosecute.'" *Arnold*, 2017 WL 6497321 at *8 (quoting *O'Connor*, 2006 WL 1490134 at *7).  In support of her motion to dismiss, Officer Meyer merely argues that Manivannan's allegations against her are conclusory statements and are inadequate as a matter of law. *Doc. 44* at 21.

Manivannan alleges that Officer Meyer obtained information from Verizon and Google that proved Beck had fabricated evidence against him. *Doc. 30* at ¶ 28. Additionally, Manivannan claims that Officer Meyer and McGoron received an email that contradicted Beck's claim that Manivannan contacted her after she requested him to stop. *Id*.  Furthermore, Manivannan alleges that Officer Meyer and McGoron withheld a letter from the DOE which showed that the evidence used at trial was obtained in violation of the Privacy Act of 1974. *Id*. at ¶ 29.

Based on these specific assertions, Manivannan's allegations go beyond mere conclusions.  Indeed, Manivannan specifically refers to documents and information from Verizon, Google, and the DOE to support his claim that McGoron and Officer Meyer knowingly relied on fabricated evidence.  As such, Manivannan has identified evidence related to his claims that McGoron and Officer Meyer knowingly relied on fabricated evidence during his criminal

21

proceedings.  Accordingly, we find that "[t]hese allegations amount to much more than a bare assertion, and are thus sufficient to state a claim of malicious prosecution." *Saunders v. McDonald*, No. 3:17-cv-1686, 2018 WL 4171602, at *5 (M.D. Pa. June 25, 2018), *report and recommendation adopted* 2018 WL 4169083 (M.D. Pa. Aug. 30, 2018).

Regarding the malicious intent element of a malicious prosecution claim, Officer Meyer argues that Manivannan fails to allege that she acted with malicious intent. *Doc. 44* at 22-23.   Yet, "'[m]alice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights.'" *Carson v. Aurand*, No. 1:17-cv-01263, 2019 WL 2539447, at *8 (M.D. Pa. June 20, 2019) (quoting *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 435 (M.D. Pa. 2000) (internal citations and quotations omitted)).  Additionally, "malice may be inferred from the absence of probable cause." *Carson*, 2019 WL 2539447 at 8 (quoting *Bristow*, 80 F. Supp. 2d at 435 (internal citations omitted)).

Here, Manivannan argues that Officer Meyer and McGoron lacked probable cause when the criminal proceedings against him were initiated.[5]  Indeed, Manivannan specifically alleges that Officer Meyer knowingly failed to disclose

---

[5] McGoron does not argue that Manivannan failed to sufficiently allege this element.

exculpatory evidence and ignored fabricated evidence.  Such conduct, as alleged, can create an inference of malice. *See Washington v. Brown*, No. 16-cv-02955, 2017 WL 1833007, at *7 (E.D. Pa. May 5, 2017) ("'Deliberately concealing or deliberately failing to disclose exculpatory evidence, like 'maliciously tendering false information' can . . . form the basis for an inference that a [defendant] acted with malice in initiating and maintaining a prosecution.'") (quoting *Vanderklok v. United States*, No. 15-cv-00370, 2016 WL 4366976, at *12 (E.D. Pa. Aug. 16, 2016) (internal citations and quotations omitted)).  Accordingly, we find that Manivannan has sufficiently alleged that Officer Meyer and McGoron acted maliciously or for a purpose other than bringing the plaintiff to justice.

## 2. Immunity.

In her brief in support of the motion to dismiss, Officer Meyer argues that she is entitled to immunity from Manivannan's state law claims. *Doc. 44* at 27.  Specifically, Officer Meyer argues that, as a PSU police officer, she is entitled to immunity under either the Sovereign Immunity Act or the Political Subdivision Tort Claims Act ("PSTCA"). *Id.*  Officer Meyer, however, appears to argue that she should be entitled to the same immunities as a municipal police officer, which

would fall under the PSTCA, 42 Pa.C.S.A. § 8542.[6]  *Id.* at 28; *see also Ferber v. City of Phila.*, 661 A.2d 470, 473 (Pa. Cmwlth 1995) ("The Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541 - 8564, gives local governmental units immunity from unlawful or negligent conduct of police officers acting within the scope of their duties.").

The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C. S. A. § 8541.  The PSTCA enumerates nine exceptions to a local agency's immunity for specific negligent acts. 42 Pa.C.S.A. § 8542.[7]  Employees of local agencies are generally immune from liability to the same extent as their employing agency providing they were acting within the scope of their employment. 42 Pa.C.S.A. § 8545.  But immunity under the PSTCA does

_____

[6]  Although it is not entirely clear if PSU police officers are entitled to immunity under the PSTCA, because we find that Manivannan sufficiently alleges that Officer Meyer acted with malice, we need not decide whether a PSU police officer is entitled to immunity under the PSTCA.

[7]  "The PSTCA contains the following exceptions to this grant of general immunity, whereby liability may be imposed on a local agency for the negligent acts of the local agency or its employees acting within the scope of their office or duties: (1) vehicle liability; (2) the care, custody and control of personal property; (3) the care, custody and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody and control of animals." *Atkinson v. City of Phila.*, No. 99-cv-1541, 2000 WL 295106, at *2 (E.D. Pa. Mar. 21, 2000) (citing 42 Pa.C.S.A. § 8542).

not apply when the act of the employee that caused the injury "constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C. S. A. § 8550.

Here, we have already determined that Manivannan sufficiently alleges, in his malicious prosecution claim, that Officer Meyer acted with malice. Thus, as alleged, Officer Meyer acted with malicious intent, and is not entitled, as this stage of the case, to immunity under the PSTCA.[8]

### 3. Collateral estoppel.

McGoron and Officer Meyer further argue that Manivannan's malicious prosecution claims are barred by the doctrine of issue preclusion because the underlying facts of Manivannan's litigation related to Beck were addressed in *Manivannan v. DOE*. *Doc. 35* at 13-14, *doc. 44* at 26-28. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion and issue preclusion "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing

---

[8] As discussed *infra*, because Manivannan sufficiently alleges a conspiracy claim against Officer Meyer, and a necessary element of a conspiracy claim is willful misconduct, we also find that Officer Meyer is not entitled to immunity under the PSTCA for the Pennsylvania state law conspiracy claim.

inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Here, we deal with issue preclusion, also known as collateral estoppel, which "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies." *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999). Collateral estoppel "forecloses relitigation in a later action of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *Id*. at 199 (internal quotations omitted). Collateral estoppel applies when four elements are satisfied: "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Peloro v. U.S.*, 488 F.3d 163, 175 (3d Cir. 2007) (internal quotations omitted).[9] Defendants in a § 1983 lawsuit may raise a collateral-estoppel defense when a plaintiff attempts to relitigate an issue decided adversely against him or her in a prior

---

[9] In her brief in support of the motion to dismiss, Officer Meyer cites to Pennsylvania's issue preclusion standard (*doc. 44* at 18); however, here we are called upon to determine the preclusive effect of judgments from the Federal Circuit Court and the Western District of Pennsylvania. Thus, because we are not called upon to determine the preclusive effect of a judgment from a Pennsylvania court, Pennsylvania preclusion law does not apply.

criminal proceeding. *Smith v. Hanuska*, No. 1:09-CV-0889, 2011 WL 995985 *5 (M.D. Pa. March 17, 2011) (citing *James v. Heritage Valley Fed. Credit Union*, 197 Fed. App'x 102, 105 (3d Cir. 2006)). "The pendency of a criminal appeal generally does not deprive a judgment of its preclusive effect." *U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 905 F.2d 610, 621 (2d Cir. 1990) (internal quotations omitted) (citing *Sherman v. Jacobson*, 247 F.Supp. 261, 268 (S.D.N.Y. 1965) (holding that "judgment may be final for purposes of collateral estoppel, despite the fact that an appeal from it has not been decided")).

Here, McGoron and Officer Meyer argue that the underlying facts concerning Manivannan's misconduct appeared in *Ph.D., Manivannan, Ayyakkannu v. Dep't. of Energy*.[10] Specifically, Officer Meyer argues that "the DOE demonstrated, by clear and convincing evidence, detailed findings of fact that Plaintiff had engaged in serious misconduct towards F.B." *Doc. 44* at 19 (citing *Ph.D., Manivannan, Ayyakkannu*, 2020 WL 1130149). Officer Meyer further

---

[10] In *Ph.D., Manivannan, Ayyakkannu v. Dep't. of Energy*, Manivannan pursued relief for an alleged retaliation for whistleblowing activities under the Civil Service Reform Act of 1978, Pub. L. No. 95-454. *See Ph.D., Manivannan, Ayyakkannu v. Dep't. of Energy*, No. PH-1221-18-0230-W-3, 2020 WL 1130149 (M.S.P.B. Mar. 4, 2020). Manivannan's appeal was denied by an administrative judge, and the United States Court of Appeals for the Federal Circuit affirmed the administrative judge's decision. *See Manivannan v. DOE*, No. 20-1804, 2021 WL 4735304 (Fed. Cir. Oct. 12, 2021).

contends that the findings that Manivannan maintained a romantic relationship with Beck, accessed her personal email account without her consent, and contacted her via a PSU lab supervisor, support probable cause for the criminal charges brought against Manivannan. *Id*. at n.13.

In the present case, Manivannan's malicious prosecution claims hinge upon his allegation that there was no probable cause to initiate the criminal proceedings against him.  Specifically, Manivannan alleges that McGoron and Officer Meyer knowingly relied on false or fabricated evidence throughout the criminal proceedings.  In *Ph.D., Manivannan, Ayyakkannu v. DOE*, however, the MSPB found that Manivannan had engaged in misconduct towards Beck, not that McGoron or Officer Meyer had probable cause to initiate the criminal proceedings. Additionally, Officer Meyer notes that in *Manivannan v. U.S. Dept. of Energy*, the court concluded that "no factual error lies in stating that the DOE found Manivannan 'conducted an inappropriate sexual relationship with the intern and then stalked and otherwise physically and psychologically abused her when she tried to end the relationship.'" *Manivannan v. U.S. Dept. of Energy*, No 18-cv-297, 2021 WL 62646, at *4 (W.D. Pa. Jan. 7, 2021) (quoting *Manivannan v. U.S. Dept. of Energy*, No 18-cv-297, 2020 WL 5946876, at *1 (W.D. Pa. Oct. 7, 2020)). Officer Meyer, however, fails to demonstrate how the issue decided in these two

28

prior cases is identical to the issue here.[11]  Accordingly, we find, at this early stage, that Manivannan's malicious prosecution claims is not barred by collateral estoppel.

### 4. Manivannan's state law malicious prosecution claim against Beck and Mishra.

Beck and Mishra argue that, since they are private individuals, they could not have initiated the criminal proceedings against Manivannan. *Doc. 38* at 13. Beck and Mishra note Comment "g" of § 653 of the Restatement (Second of Torts), which provides:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not.  When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain.  The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability

---

[11] We note that in her brief in support of the motion to dismiss, McGoron provides even less explanation than Officer Meyer's brief, and she also fails to demonstrate how the issue decided in any prior case is identical to the issue here.

the person whose information or accusation has led the officer to initiate the proceedings.

If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.  In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Restatement (Second) of Torts § 653, comment g.

Beck and Mishra argue that, because Manivannan alleges that McGoron and Officer Meyer "knew that the allegations made by Ms. Beck and Mr. Mishra were false[,] yet they initiated proceedings against the Plaintiff establishes that those alleged falsities were not the determining factor in initiating prosecution." *Doc. 52* at 5.  We note, however, that courts within the Third Circuit have found that "a private citizen can be liable for malicious prosecution … if she 'procured the prosecution … by giving knowingly false information to a public official that leads to the initiation of proceedings.'" *Zabresky v. Von Schmeling*, No. 3:12-cv-0020, 2013 WL 315718, at *9 (M.D. Pa. Jan. 28, 2013) (quoting *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 358 (E.D. Pa. 2012)); *see also Macolino v. Twp. of Lower Moreland*, No. 19-cv-1476, 2020 WL 5820742, at *11 (E.D. Pa. Sept. 30, 2020) (denying the motion to dismiss the plaintiff's malicious

prosecution claim against a private individual because the plaintiff alleged that the private individual knowingly provided false information to the police); *see also* *Stevens v. Sullum*, No. 3:30-cv-1911, 2021 WL 2784817, at *13 (M.D. Pa. July 2, 2021) (denying the motion to dismiss the plaintiff's malicious prosecution claim against a private individual because the plaintiff alleged that the private individual knowingly provided false information to the district attorney and that false information led to the plaintiff's prosecution).

Here, Manivannan alleges that Beck and Mishra knowingly provided false and fabricated evidence to Officer Meyer, which ultimately led to his prosecution. Accordingly, we find that Manivannan sufficiently alleges that Beck and Mishra initiated the criminal proceedings against him, and thus, Manivannan has satisfied the first element of his state malicious prosecution claim against Beck and Mishra.

Beck and Mishra then argue that Manivannan previously conceded that probable cause existed for his prosecution when he waived his right to a preliminary hearing. *Doc. 38* at 15. Beck and Mishra refer to Rule 541 of the Pennsylvania Rules of Criminal Procedure, which governs waivers of preliminary hearings, and provides that:

> (A) The defendant who is represented by counsel may waive the preliminary hearing at the preliminary arraignment or at any time thereafter.

> (1) The defendant thereafter is precluded from raising the
> sufficiency of the Commonwealth's *prima facie*[12] case
> unless the parties have agreed at the time of the waiver
> that the defendant later may challenge the sufficiency.

Pa. R. Crim. P. 541(A)(1).  We note, however, that in their brief in support of their

motion to dismiss, Beck and Mishra fail to cite to any record or evidence that

Manivannan waived his right to a preliminary hearing. *Doc. 38* at 15.

Additionally, Manivannan disputes the notion that he waived his right to a

preliminary hearing in his brief in opposition. *Doc. 46* at 7.  Moreover, nowhere in

Manivannan's amended complaint does he mention a preliminary hearing.  Indeed,

in Beck and Mishra's reply brief to Manivannan's brief in opposition, they

seemingly abandon their contention that Manivannan waived his right to a

preliminary hearing, as they fail to counter his argument.  Accordingly, we will not

consider Beck and Mishra's waiver of a preliminary hearing argument.[13]

------

[12] "At the preliminary hearing stage of a criminal prosecution, the
Commonwealth need not prove the defendant's guilt beyond a reasonable doubt,
but rather, must merely put forth sufficient evidence to establish a *prima facie* case
of guilt … A prima facie case exists when the Commonwealth produces evidence
of each of the material elements of the crime charged and establishes probable
cause to warrant the belief that the accused committed the offense.  Furthermore,
the evidence need only be such that, if presented at trial and accepted as true, the
judge would be warranted in permitting the case to be decided by the jury"
*Commonwealth v. Karetny*, 880 A.2d 505, 514 (Pa. 2005) (internal citations
omitted).

[13] We note that, in their reply brief, Beck and Mishra argue that probable
cause existed for the institution of the criminal proceedings based on Pennsylvania
cases that have found probable cause is established via a conviction, even if that
conviction is later overturned. *Doc. 52* at 6-7.  Beck and Mishra, however, failed to

Beck and Mishra also argue that Manivannan has not shown he is innocent of the crime charged in the underlying prosecution, and thus, has not established the favorable termination element of his malicious prosecution claim. *Doc. 38* at 12.  To support this argument, Beck and Mishra cite to *Hector v. Watt*, where the Third Circuit held that:

> Even if the plaintiff in malicious prosecution can show that the defendant acted maliciously and without probable cause in instituting a prosecution, it is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged.

*Hector v. Watt*, 235 F.3d 154, 156 (3d Cir. 2000) (citations omitted).

We note, however, that *Hector* dealt with a § 1983 malicious prosecution, and not a Pennsylvania state law malicious prosecution claim. *See Hector*, 235 F.3d at 155.  Beck and Mishra fail to note this distinction or cite to cases involving Pennsylvania state law malicious prosecution claims.  Regardless, the Supreme Court in *Thompson v. Clark* recently held that "a Fourth Amendment claim under

---

raise this argument in their brief in support of their motion to dismiss.  A reply brief is intended to "reply to matters argued in a brief in opposition" to a motion. M.D. Pa. L.R. 7.7.  A party opposing a motion, "typically does not have the opportunity to respond" to an argument raised in a reply brief. *Sloan v. Murray*, No. 3:CV-11-0994, 2017 WL 3495190, at *5 n.4 (M.D. Pa. Aug. 10, 2017). Thus, "[a] reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012).

§1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).  Thus, under *Thompson*, Manivannan need not allege or demonstrate actual innocence to satisfy the favorable termination element of a malicious prosecution claim.  And because it is undisputed that Manivannan's criminal prosecution ended without a conviction, he has satisfied the favorable termination element as it relates to his state law malicious prosecution claim against Beck and Mishra.

Beck and Mishra also contend that Manivannan failed to allege malice. *Doc. 38* at 21.  To support this argument, Beck and Mishra highlight ¶ 105 of Manivannan's amended complaint, which states, "[the acts and omissions by Meyer, McGoron, Beck, and Mishra described in the preceding paragraphs were the direct and proximate cause of Dr. Manivannan's injuries because these Defendants knew, or should have known, that their conduct would result in the wrongful arrest, prosecution, and conviction of Dr. Manivannan." *Doc. 30* at ¶ 105. Beck and Mishra argue that this language alleges that the defendants were negligent but not malicious. *Doc. 38* at 16.

Similar to Manivannan's allegations against McGoron and Officer Meyer, Manivannan, alleges that Beck and Mishra knowingly provided false and

fabricated evidence so that Manivannan could be prosecuted.  Thus, for the same

reason that we find Manivannan sufficiently alleges that McGoron and Officer

Meyer acted with malice, we also find that he sufficiently alleges that Beck and

Mishra acted with malice.  Accordingly, we find that Manivannan has stated a

Pennsylvania state law malicious prosecution claim against Beck and Mishra and

we recommend denying Beck and Mishra's motion to dismiss as it relates to this

claim.

### D. Manivannan's Due Process violation claims.

In count two of his amended complaint, Manivannan alleges that McGoron[14]

and Officer Meyer violated "42 U.S.C. § 1983 Deprivation of Liberty Without Due

Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding

Material Exculpatory Evidence, and Deliberately Failing to Conduct a

Constitutionally Adequate Investigation." *Doc. 30* at 17.  It is well established that

"'[a] defendant has a due process right to a fair trial.  Government agents may not

manufacture evidence and offer it against a criminal defendant.'" *Doswell v. City*

*of Pittsburgh*, No. 07-cv-0761, 2009 WL 1734199, at *8 (W.D. Pa. June 16, 2009)

---

[14] In her brief in support of the motion to dismiss, McGoron only argues, as it relates to count two, that she is entitled to absolute immunity. *Doc*. 35 at 11. Because we have already determined that McGoron, at this stage, is not entitled to absolute immunity, we will consider Manivannan's count two claim against her as sufficiently plead on the merits at this stage.

(citing *Stepp v. Mangold*, No. 94-cv-309921, 1998 WL 309921, at \*7 (E.D. Pa. June 10, 1998)).  Indeed, "'police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory evidence to the prosecutor.'" *Doswell*, 2009 WL 1734199 at \*8 (quoting *Yarris v. County of Delaware*, 465 F.3d 129, 141 (3d Cir. 2006)).

Officer Meyer argues that Manivannan's amended complaint is "devoid of any indication as to what evidence or witness statement these conclusory assertions allegedly refer – let alone what information or evidence Officer Meyer purportedly withheld from prosecutors." *Doc. 44* at 14-15.  Additionally, Officer Meyer contends that Manivannan's failure to conduct a constitutionally adequate investigation claim is also insufficiently pleaded as he has failed to allege that Officer Meyer acted intentionally or recklessly in a manner that shocks the conscience.[15] *Id.* at 21.

As previously discussed, Manivannan alleges that Officer Meyer withheld allegedly exculpatory evidence such as information from Verizon and Google that showed Beck fabricated evidence that was given to the police. *Doc. at ¶ 8*.

---

[15] "'To bring a successful due process claim for failure to investigate, a plaintiff must show that a police officer acted intentionally or recklessly, in a manner that shocks the conscience, in failing to investigate.'" *Thomas v. Stanek*, No. 14-cv-1415, 2015 WL 757574, at \*7 (W.D. Pa. Feb. 23, 2015) (quoting *Eckman v. Lancaster City*, 742 F. Supp. 2d 638, 653)).

36

Additionally, Manivannan alleges that Officer Meyer "obtained evidence from Google that conflicted with Beck's fabricated screenshots and Beck's claims that her e-mail account had been hacked." *Id*. at ¶ 29.  These allegations sufficiently identify evidence that Officer Meyer allegedly withheld during the criminal proceedings.  Because we find that Manivannan has sufficiently stated a Due Process violation claim against McGoron and Officer Meyer, we need not address the arguments regarding whether Officer Meyer's alleged actions shock the conscious.  Accordingly, this is sufficient to establish a Due Process violation claim.

### E. Manivannan's conspiracy claims against all individual defendants.

In count three of his amended complaint, Manivannan asserts a 42 U.S.C. § 1983 claim against McGoron and Officer Meyer. *Doc. 30* at 18.  Additionally, in count eight, Manivannan alleges a civil conspiracy claim under Pennsylvania state law against all individual defendants. *Id*. at 26.

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989).  "To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v.*

*City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)).  "This requires that the state actors took 'concerted action' based on an 'agreement' to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018).

"It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013).  Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013).

Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009).  Still, to state a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).  "To properly plead such

an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).[16]

Before we begin our discussion of Manivannan's conspiracy claims, we note that Beck and Mishra argue that Manivannan's conspiracy claim against them fails because his underlying malicious prosecution claim fails. *Doc. 38* at 17-18. Because we have already determined that Manivannan sufficiently pleads a malicious prosecution claim against Beck and Mishra, we will not consider their argument. Additionally, McGoron's sole argument, as it relates to count three, is that she is entitled to absolute immunity. *Doc*. 35 at 11. Because we have already determined that McGoron, at this stage, is not entitled to absolute immunity, we will consider Manivannan's count three claim against her as sufficiently plead on the merits.

Officer Meyer argues that Manivannan fails to allege any details regarding the defendants' overt acts in participating in a conspiracy against him and that he fails to allege facts describing the defendants' objectives and which role each

---

[16] Manivannan also alleges a Pennsylvania state law civil conspiracy claim against all of the individual defendants. "To state a claim for civil conspiracy under Pennsylvania law, a complaint must allege:
(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Onzik v. Borough of Edwardsville*, No 08-cv-2036, 2009 WL 2475021, at *4 (M.D. Pa. Aug. 11, 2009) (citing *McKeeman v. Corestates Bank, N.A*., 751 A.2d 655, 660 (Pa Super. Ct. 2000)).

defendant allegedly played in accomplishing those objectives. *Doc. 44* at 22-23 (citing *Martin v. Secretary of Corrections*, No. 16-cv-2060, 2018 WL 1158250, at *5 (M.D. Pa. Mar. 5, 2018)).

Here, we have already found that Manivannan's malicious prosecution and Due Process violation claims survives the motion to dismiss.  As such, "[b]ecause the fabrication-of-evidence … and Fourth Amendment malicious prosecution claims survive the motions to dismiss, 'it follows that the 42 U.S.C. § 1983 conspiracy claim . . . may also proceed.'" *Thorpe v. City of Philadelphia*, No. 19-cv-5094, 2020 WL 5217396, at *15 (E.D. Pa. Sept. 1, 2020) (quoting *Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2010)).  Accordingly, we recommend that the motions to dismiss be denied as they relate to Manivannan's § 1983 and Pennsylvania state law conspiracy claims against all individual defendants.

**F. Manivannan's failure to intervene claim.**

In count four of his amended complaint, Manivannan asserts a 42 U.S.C. § 1983 failure to intervene claim against Officer Meyer and McGoron, claiming they had opportunities to intervene on his behalf to prevent his false arrest, malicious prosecution, and deprivation of liberty without due process of law, but they declined to do so. *Doc. 30* at 19.  "[I]n order to state a § 1983 claim for failure to intervene, 'a plaintiff must show that an officer had a reasonable opportunity to

40

intervene in the face of a constitutional violation and (s)he simply refused to do so.'" *DeGroat v. Cavallaro*, No. 3:16-cv-1186, 2017 WL 2152376, at *3 (M.D. Pa. May 17, 2017) (citing *Walters v. Pa. State Police*, No. 1:13-cv-2275, 2014 WL 3908150, at *11 (M.D. Pa. Aug. 11, 2014) (citing *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)).

McGoron also attempt to argue that she is entitled to qualified immunity with respect to Manivannan's failure to intervene claim. *Doc. 35* at 14-15.  Officer Meyer also argues that Manivannan fails to state a claim for failure to intervene because courts within the Third Circuit have only recognized failure to intervene claims in the excessive force context. *Doc. 44* at 23-24.  Specifically, Officer Meyer relies on *Thorpe v. City of Phila.*, where the court declined to "accept the position that precedent which made clear that an officer ought to intervene when observing a wrongful beating likewise equally places before the Court the question as to whether an officer must intervene when confronted with the conduct at issue here arguably beyond debate." *Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (internal citations and quotations omitted).  The court in *Thrope* further held that "[b]ecause it was not sufficiently clear that reasonable officers would have understood that failing to intervene when confronted with another's fabrication and withholding of evidence violated Mr.

Thorpe's constitutional rights … the moving individual defendants [were entitled] qualified immunity with respect to the failure-to-intervene claim." *Id.* at 11.

Notably, the court in *Thorpe* did not conclude that a failure to intervene claim could not be established outside of the excessive force context. Rather, the court merely found that a state actor was entitled to qualified immunity on a non-excessive force failure to intervene claim because it was not beyond debate that failing to intervene, in this context, violated the plaintiff's constitutional rights. *Id.* at 10-11. Thus, for a qualified immunity defense, *Thorpe* is instructive, and we find that McGoron and Officer Meyer, are entitled to qualified immunity as it relates to Manivannan's failure to intervene claim against them.[17] Accordingly, we recommend that McGoron and Officer Meyer's motion to dismiss be granted with prejudice as it relates to Manivannan's failure to intervene claim.

### G. Manivannan fails to properly allege a *Monell* claim against Centre County and PSU.

In counts five and six, Manivannan alleges a *Monell* claim against Centre County and PSU.[18] *Doc. 30* at 20, 22. Municipalities cannot be held liable under

---

[17] Although Officer Meyer does not argue that she is entitled a qualified immunity for this specific claim, she does, however, argue that she is entitled to qualified immunity for all of Manivannan's § 1983 claims. *See doc. 44* at 26.

[18] In its brief in support of its motion to dismiss, PSU states:

42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of

*respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691

(1978).  Rather, "under § 1983, local governments are responsible only for 'their

*own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).

"[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v.*

*Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim

against a municipality is to allege "that an unconstitutional policy or custom of the

municipality led to his or her injuries." *Id*.  Another way for a plaintiff to present a

claim against a municipality is to allege that his injuries "were caused by a failure

or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'"

*Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

---

Generally, PSU is considered a Commonwealth-related
institution, not a municipality. *Samuel v. Univ. of Pitt*., 375 F.
Supp. 1119, 1127 (W.D. Pa. 1974), *rev'd in part on other*
*grounds*, 538 F.2s 991 (3d Cir. 1976).  However, even
assuming it may be considered a "municipality" for *Monell*
purposes in this context by virtue of the PSU Police, *see, e.g.*,
*Bynum v. Trustees of the Univ. of Pennsylvania*, No. 14-4548,
2014 WL 6473344, at *4 (E.D. Pa. Nov. 18, 2014), attached as
Exhibit "23," Plaintiff has nonetheless failed to state a claim as
described herein.

*Doc. 44* at 24 n.20.

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, the policy or customs which Manivannan describes are the alleged inappropriate handling of electronic evidence and the use of coercive techniques in investigating.  Manivannan cites to no written policy which states that employees

44

of Centre County and PSU should use these types of coercive acts in their investigations.[19]  And to the extent which Manivannan alleges that this is a custom of Centre County and PSU, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Although there is a "close relationship between policy-and-custom claims and failure-or-inadequacy claims, . . . the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106 (citation omitted).  In other words, "[p]laintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed

---

[19] In his amended complaint, Manivannan alleges that the former Centre County District Attorney, was suspended from practicing law as a "result of unlawful electronic communications with judges and the creation of a fake Facebook page." *Doc. 30* at ¶ 86.  Manivannan then states that this is an example of a pattern and practice within Centre County of mishandling electronic evidence in criminal investigations. *Id*. at ¶ 87.  We, however, agree with Centre County that this is not analogous to Manivannan's claims that Centre County had a policy or custom to train its employees to withhold exculpatory evidence, use coercive techniques to obtain confessions, and to perform conclusory investigations.

under a failure or inadequacy theory, and vice versa." *Id*. at 105.  "Notably, an unconstitutional municipal policy or custom is necessary for the former theory, but not for the latter, failure or inadequacy theory." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

In limited circumstances, a municipality's failure to train its employees about their duty to avoid violating citizens' rights may rise to the level of a constitutional violation. *Connick*, 563 U.S.at 61.  "The alleged deficiency in a training program must be closely related to the alleged constitutional injury because '"[i]n virtually every instance where a person has had his or her

46

constitutional rights violated by a city employee, [said] plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.'" *Forrest*, 930 F.3d at 109 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).  Thus, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61.

As set forth above, a municipality's failure to train must amount to deliberate indifference to the rights of persons with whom the municipal employees come into contact. *Id.*  "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Board of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 410 (1997)).  "'Ordinarily,' this requires a plaintiff to identify a 'pattern of similar constitutional violations by untrained employees' that 'puts municipal decisionmakers on notice that a new program is necessary . . . .'" *Johnson v. City of Philadelphia*, No. 19-2938, 2020 WL 5638661, at *7 (3d Cir. Sept. 22, 2020) (quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014)). "Otherwise, the plaintiff needs to show that failure to provide the identified training would 'likely . . . result in the violation of constitutional rights'—i.e., to show that 'the need for more or different training [was] so obvious.'" Id. (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Here, Manivannan points only to his one-off instance in which he alleges that Centre County and PSU's failure to properly train their employees in the handling of electronic evidence deprived him of his constitutional rights.  This singular instance falls far short from meeting the pleading standard of a *Monell* failure to train claim. *See Milbrand v. Miner*, No. 4:17-cv-761, 2018 WL 4051747, at *7 (M.D. Pa. Aug. 24, 2018) (finding that a plaintiff's conclusory assertions regarding a single-incident failure to train claim was insufficient to establish a *Monell* claim, particularly because the failure to train claim was "completely undercut by the thrust of the allegations in his amended complaint, which, as before, is not that the City of Shamokin police officers lack adequate training in determining the existence of probable cause, but rather, that these two specific police officers … arrested him and initiated criminal proceedings against him for personal reasons, despite an alleged lack of probable cause.").

Accordingly, we find that Manivannan has failed to allege a *Monell* claim against either Centre County or PSU; however, in light of the liberal leave to amend standard, we recommend that Manivannan be granted leave to amend this claim.

**V. Recommendations.**

Based on the foregoing, the following **IS RECOMMENDED**:

48

**Count One (42 U.S.C. § 1983 Malicious Prosecution):** The motions to dismiss (*docs. 34*, *43*) be **DENIED.**

**Count Two (42 U.S.C. § 1983 Due Process Violation):** The motions to dismiss (*docs. 34*, *43*) be **DENIED.**

**Count Three (42 U.S.C. § 1983 Civil Rights Conspiracy):** The motions to dismiss (*docs. 34*, *43*) be **DENIED**.

**Count Four (42 U.S.C. § 1983 Failure to Intervene):** The motions to dismiss (*docs. 34*, *43*) be **GRANTED** with prejudice to Manivannan amending this claim.

**Count Five (42 U.S.C. § 1983 *Monell* Claim):** The motion to dismiss (*doc. 36*) be **GRANTED** without prejudice to Manivannan amending this claim.[20]

---

[20] Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a). "The plaintiff is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id*. "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett*, 938 F.3d 82. "Thus, the most recently filed amended complaint becomes the operative pleading." *Id*. In

**Count Six (42 U.S.C. § 1983 *Monell* Claim):** The motion to dismiss (*doc. 43*) be **GRANTED** without prejudice to Manivannan amending this claim.

**Count Seven (State Law Malicious Prosecution):** The motions to dismiss (*docs. 34*, *37*, *43*) be **DENIED**.

**Count Eight (State Law Civil Conspiracy):** The motions to dismiss (*docs. 34*, *37*, *43*) be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

---

other words, if an amended complaint is filed, the original complaint will have no role in the future litigation of this case.

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of August, 2022.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge