UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AYYAKKANNU MANIVANNAN, | : | CIVIL NO. 4:21-CV-01359 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| COUNTY OF CENTRE, | : | |
| PENNSYLVANIA, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM OPINION</u>**

## I.  Introduction.

The instant case has its roots in criminal charges lodged against the plaintiff, Ayyakkannu Manivannan ("Manivannan"), in 2015, of which he was initially convicted.  Those convictions were later vacated by the Pennsylvania Superior Court, however, and the county's district attorney's office later declined to re-try the case.  Manivannan filed the instant lawsuit against several individuals and entities involved in his prosecution.  The defendants have now all filed motions for summary judgment.  Manivannan has entirely failed to oppose two of the motions for summary judgment and failed to timely oppose the remaining motion for summary judgment.  We will thus deem the motions for summary judgment unopposed.  After a review of the unopposed motions for summary

judgment on their merits, we will grant the pending motions for summary judgment and close the case.

## II. Background.

Manivannan's claims in the instant case are based upon his criminal prosecution for harassment, stalking, and unlawful use of a computer. *See doc. 30.* The victim of these alleged criminal acts was Faith Beck ("Beck"), "a graduate student who had served as an intern" who Manivannan supervised in his work at the Department of Energy. *Doc. 30* ¶ 11. On April 19, 2016, Manivannan was acquitted of stalking but convicted of harassment and all five counts of unlawful use of a computer. *Id.* ¶ 32. "On May 4, 2018, the Pennsylvania Superior Court vacated the criminal convictions." *Id.* ¶ 33. On August 2, 2019, the District Attorney's Office dismissed all Manivannan's criminal charges rather than retrying him. *Id.* ¶ 35.

Manivannan initiated the instant suit on August 4, 2021, by filing a complaint pro se.[1] *Doc. 1.* On December 13, 2021, Manivannan filed an amended complaint, which is the operative complaint at this juncture. *Doc. 30.* The amended complaint named six defendants, two of which—County of Centre,

---

[1] Although Manivannan initially was self-represented, since March 11, 2023, Manivannan has been represented by counsel. *See doc. 74.*

Pennsylvania and The Pennsylvania State University—are no longer defendants in this case because we dismissed Manivannan's claims against them at the motion-to-dismiss phase. *See docs. 55, 65, 66.* The remaining defendants are as follows: (1) a Pennsylvania State University campus police officer who investigated the case, Jessica Meyer ("Meyer"); (2) an Assistant District Attorney involved in Manivannan's prosecution, Megan McGoron ("McGoron"); (3) Beck; and (4) Beck's boyfriend at the time the charges were brought, Partha Mishra ("Mishra"). *See doc. 30.* Manivannan brings five claims against Meyer and McGoron: (1) § 1983 claims for violations of his Fourth Amendment right to be free from malicious prosecution; (2) § 1983 claims for violations of his Fourteenth Amendment right to due process based on Meyer's and McGoron's alleged use of fabricated evidence and failure to provide exculpatory evidence during Manivannan's criminal trial; (3) § 1983 claims for conspiracy to violate his civil rights; (4) state-law claims for malicious prosecution; and (5) state law claims for conspiracy. *See id.* And he brings state-law claims for malicious prosecution and conspiracy against Beck and Mishra. *See id.*

Currently pending are three motions for summary judgment. *Docs. 127, 132, 136.* Meyer and McGoron each filed motions for summary judgment (*docs. 127, 132*), and Beck and Mishra jointly filed a motion for summary judgment (*doc. 136*). The motions for summary judgment were all accompanied by briefs in

support. *Docs. 129, 133, 137.* As discussed in further detail below, Manivannan never filed a brief in opposition to Meyer's or McGoron's motions for summary judgment and Manivannan's brief in opposition to Beck and Mishra's joint motion for summary judgment was fatally untimely. We thus review the merits of the summary judgment motions herein without the benefit of oppositional filings.

### III.  Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the

nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

## V.  Discussion.

### A.  The Statement of Material Facts and the Motions for Summary Judgment are Unopposed.

Here, in accordance with Local Rule 56.1, the defendants jointly filed a statement of material facts. *Doc. 128*.  Pursuant to Local Rules 56.1 and 7.6, Manivannan's counterstatement of material facts was due on the same date as his brief in opposition to the motions for summary judgment. *See* M.D. Pa. L.R. 7.6, 56.1.

Because the motions for summary judgment and their respective briefs in support were filed on August 25, 2025, and August 26, 2025, pursuant to Local

Rule 7.6, briefs in opposition to those motions for summary judgment were due on or before September 15, 2025, and September 16, 2025. *See* M.D. Pa. L.R. 7.6. We granted Manivannan two extensions of time such that his briefs in opposition to the motions for summary judgment were due on or before October 25, 2025. *Docs. 139, 141, 144, 147; see also doc. 185* at 2–7 (setting forth a complete procedural history regarding deadlines for Manivannan's opposition to the motions for summary judgment).  But Manivannan did not timely file any such opposition. *See docket generally*.

On October 27, 2025, at 11:58 p.m., we received an email from Attorney Powell with opposing counsel copied. The email read as follows:

Dear Judge Schwab,

On behalf of Plaintiff Ayyakkannu Manivannan in the above referenced action, I am attaching Plaintiff's opposition to defendants' joint statement of facts and a link below to Plaintiff's exhibits in support of his opposition.

Plaintiff respectfully moves to seal all of the exhibits on the grounds that they are protected under the confidentiality order and concern an expunged criminal matter, except Exhibit PX229, which is a public document.  A formal motion to seal and a hard copy of the documents we request to be sealed will follow.

Thank you for your courtesy and attention to this matter.  If you or your staff have any difficulty accessing the link to the exhibits to be sealed, please do not hesitate to contact me.

[link]

> Respectfully,
> John Powell

Attached to the email was a table of exhibits, a counterstatement of material facts, and a brief in opposition to Beck and Mishra's joint motion for summary judgment. Absent from the email was any explanation for sending an email rather than properly filing this material on the docket or for missing the October 25, 2025 deadline for briefs in opposition to the motions for summary judgment. On November 4, 2025, we issued an order explaining that Local Rule 5.6 sets forth the manner by which parties can file documents by electronic means. *Doc. 158.* And the Local Rules also set forth how to file documents under seal—namely, "present[ed] to the Clerk's Office[] on paper[.]" M.D. Pa. L.Cr.R. 49; *see also* M.D. Pa. L.R. 5.8. Thus, we informed the parties that we would "take no action on any documents submitted via email rather than filed on the docket as required." *Doc. 158.*

On November 3, 2025, one week after sending the above-described email, Manivannan filed on the docket a motion to file documents under seal ("motion to seal"). *Doc. 157.* In his motion to seal, Manivannan asserted that "[o]n October 27, 2025, [he] timely submitted a set of chronologically ordered exhibits in opposition to Defendants' motions for summary judgment, an accompanying table of exhibits, a response in opposition to Defendants' join[t] statement of facts, and a brief in opposition to Defendants[] Beck and Mishra's motion[] for summary

9

judgment[.]" *Id.* ¶ 1.  Manivannan did not attempt to explain why he believed that emailing the undersigned was an appropriate way to submit these documents which should have been properly filed on the docket, nor did Manivannan attempt to explain why he considered a submission on October 27, 2025, to be "timely" in light of the October 25, 2025 deadline. *See generally id.*

With our leave to do so, Manivannan later refiled his motion to seal ("Manivannan's renewed motion to seal"). *Docs. 167, 168, 181.*  As we explain in our order denying Manivannan's motion to seal, Manivannan's renewed motion to seal was timely. *Doc. 185* at 13.   But Manivannan's counterstatement of material facts and his brief in opposition to Beck and Mishra's summary judgment motion—the only brief in opposition to the pending motions for summary judgment Manivannan has ever presented to the court—was not timely, as described below.

We granted Manivannan's second motion for extension of time to file his briefs in opposition to the motions for summary judgment, and set the due date as Saturday, October 25, 2025, the date Manivannan requested. *See doc. 144, 150.* Despite our granting his request for such deadline, Manivannan appears to have unilaterally granted himself leave to file via email and another extension of time to October 27, 2025.  Because he sent his email on the next business day following the deadline we set, we must point out that Fed. R. Civ. P. 6(a) governs computing

10

deadlines where a period is provided rather than a specific deadline and sets the deadline as the last day of the period or the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6 advisory committee's note to 2009 amendment.  Because Manivannan's deadline for his briefs in opposition set a date certain (*see docs. 147, 150*), no computation was required, and the fact that October 25, 2025, was a Saturday was of no consequence.

Moreover, Manivannan did not file his brief in opposition to Beck and Mishra's motion for summary judgment until November 3, 2025, because Manivannan's October 27, 2025 email submission was not a proper filing. *See doc. 185* at 8–9 (citing M.D. Pa. L.R. 5.6, 5.8; M.D. Pa. L.Cr.R. 49(c)(1)); *see also doc. 158*.  And Manivannan's renewed motion to seal being timely does not rescue Manivannan's brief in opposition to Beck and Mishra's motion for summary judgment from untimeliness. *See doc. 185* at 17 (explaining that the parties had leave to file renewed motions to file documents under seal because we deemed their initial motions to file documents under seal to be withdrawn and did not consider their merits).

"While district courts generally have broad discretion to issue case-management orders, that discretion is constrained by Fed. R. Civ. P. 6(b)(1)(B), which states that 'the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable

11

neglect.'" *Talley v. Wetzel*, No. 21-1855, 2022 WL 3712869, at *2 (3d Cir. Aug. 29, 2022). "Thus a party must make a formal motion for extension of time and the district court must make a finding of excusable neglect," before a court can grant an extension of time sought after the time to act has expired. *Id.* Here, we have no motion for extension of time nor any attempt to show that excusable neglect caused Manivannan's belatedness in filing his brief in opposition to Beck and Mishra's motion for summary judgment. We, therefore, will not consider Manivannan's counterstatement of material facts or brief in opposition to Beck and Mishra's motion for summary judgment. Accordingly, we deem the defendants' joint statement of material facts and Beck and Mishra's motion for summary judgment to be unopposed, as are Meyer's and McGoron's motions for summary judgment.

Because we have deemed the statement of material facts to be unopposed, we will accept the defendants' version of the material facts. *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion"). In cases where courts have deemed a motion for summary judgment unopposed, a court may admitted the moving party's statement of facts, *see, e.g.*, *Davis v. Bittenbender*, 1:13-cv-2660, 2016 WL 561946, at *1 (M.D. Pa. Feb. 12, 2016), sans any conclusory paragraphs, *e.g.*, *Hummel v. Wal-Mart Super Ctr.*, No. 4:06-CV-2419, 2007 WL

9757557, at *3 n.4 (M.D. Pa. Dec. 4, 2007) ("It is well-established that conclusions [of] law are not deemed admitted by the failure to respond thereto.") (citing first *Ferens v. Deere & Co.*, 639 F. Supp. 1484, 1486 (W.D. Pa. 1986), vacated on other grounds, 487 U.S. 1212 (1988), then *Can-Tex Indus. v. Safeco Ins. Co.*, 460 F. Supp. 1022, 1023 (W.D. Pa. 1978)).  Because the defendants' statement of material facts (*doc. 128*) is unopposed and thus admitted, we will not reiterate the material facts here.[2]

In the event that the plaintiff does not file a brief in opposition to the defendant's motion for summary judgment, judges in the Middle District of Pennsylvania treat the motion as unopposed according to local rules. *E.g.*, *Stewart v. Beard*, No. 3:07-cv-1916, 2009 WL 1936627, at *1 (M.D. Pa. July 2, 2009). The Third Circuit has found no error in this treatment. *E.g.*, *Taylor v. Harrisburg Area Cmty. Coll.*, 579 Fed. App'x. 90, 93 (3d Cir. 2014) (stating that "[t]he District Court did not err. The motion for summary judgment was, in fact, unopposed, as no response brief was filed" and local rules gave the court "the power to deem the summary judgment motion as uncontested").  Per Local Rule 7.6, this principle extends to briefs filed out of time. *See* M.D. Pa. L.R. 7.6 (setting due dates for

---

[2] For a full recitation of the material facts, refer to the defendants' statement of material facts (*doc. 128*).

briefs in opposition and stating that "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion").

But a motion for summary judgment cannot simply be granted because it has been deemed unopposed. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (stating that the "action should not have been dismissed solely on the basis of the local rule without any analysis" of the merits). Instead, the court must decide the motion for summary judgment based on the merits. *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) ("[A] local rule . . . is not alone a sufficient basis for the entry of a summary judgment. There must, in addition, be a finding that judgment for the moving party is 'appropriate.'"). We thus proceed to the merits of the motions for summary judgment below.

### B.  Defendants Meyer and McGoron are Entitled to Summary Judgment on Manivannan's § 1983 Due Process Claims.

Manivannan brings § 1983 claims for violations of his right to due process against Meyer and McGoron based on alleged *Brady* violations and their alleged fabrication of evidence or knowing use thereof. *See doc. 30*. As to Manivannan's claims based on alleged *Brady* violations, Meyer argues that she was not responsible for any alleged failures to disclose exculpatory evidence. *Doc. 129* at 15–19. Meyer states that "[t]here is no evidence that Meyer would, or could, have had any role in the evaluation of evidentiary rules and requirements during

14

Manivannan's criminal trial, or the presentation of evidence at that trial." *Id.* at 16. Moreover, per Meyer, "[t]here is no evidence that Meyer had any role in providing the certification to Manivannan during trial[.]" *Id.* We agree. The record reflects no evidence of Meyer withholding any evidence, exculpatory or otherwise, from the relevant prosecutors or otherwise causing such evidence to be withheld from Manivannan.

McGoron argues that, to the extent any exculpatory evidence was withheld, she is entitled to immunity from claims arising therefrom. *Doc. 133* at 27. "It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). The record reflects that, to the extent any exculpatory evidence was not disclosed and to the extent McGoron was responsible for such nondisclosure, her actions were all taken in her prosecutorial capacity. McGoron is thus entitled to immunity from Manivannan's claims based on *Brady* violations.

As to Manivannan's § 1983 due process claims based on alleged fabrication of evidence, both Meyer and McGoron argue that there is no record of any evidence being fabricated, and, moreover, there is no record that Meyer and McGoron *knowingly* used any fabricated evidence. *Doc. 129* at 13–15; *doc. 133* at

15

24–26.  The Third Circuit has "h[e]ld that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016).  Here, the record reflects no evidence which was fabricated or, in other words, created falsely for the purpose of demonstrating Manivannan's guilt.  Moreover, for Manivannan to overcome summary judgment, "[t]here must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith." *Id.* at 372.  There is no evidence showing knowledge of incorrected evidence on Meyer's or McGoron's parts.  Thus, this is not one of those "unusual case[s] in which a [defendant] cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Id.*

For the reasons described above, we will grant Meyer's and McGoron's motions for summary judgment insofar as they seek summary judgment on Manivannan's § 1983 Fourteenth Amendment Due Process claims.

### C.  Defendants Meyer and McGoron are Entitled to Summary Judgment on Manivannan's § 1983 Malicious Prosecution Claims.

16

Meyer argues that she is entitled to summary judgment on Manivannan's federal malicious prosecution claim against her because, among other reasons, there was probable cause for the charges brought against Manivannan. *Doc. 129* at 22–25.  To state a malicious prosecution claim, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with he concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).

The probable cause "determination is necessarily fact-intensive, and it will usually be appropriate for a jury to determine whether probable cause existed." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). "Nevertheless, summary judgment may be granted on the question of probable cause if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" *Id.* (citing *Sherwood*, 113 F.3d at 401) (alteration in original).  At the summary judgment stage "we view *all* [] facts and assess whether any reasonable jury could conclude that those facts, considered in

17

their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." *Id.* "Nevertheless, in reviewing probable cause determinations made by law enforcement, the role of the courts is not that of the much-maligned 'Monday morning quarterback' whose critiques are made possible only by the benefits of hindsight." *Id.* at 469. "Rather, federal courts review the record to ensure that the proper procedure for determining probable cause was followed[,]" and, "[i]f it was not, the court itself must engage that procedure and determine whether probable cause existed in spite of that failure." *Id.* at 469–70. "[I]n conducting this analysis, the district court must identify any improperly asserted or omitted facts and, if it determines there were reckless misrepresentations or omissions, 'excise the offending inaccuracies and insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable clause." *Id.* at 470. "If it would, the plaintiff's claim fails because 'even if there had not been omissions and misrepresentations' in the affidavit presented to the magistrate judge, there would have been probable cause for the charges against the plaintiff." *Id.*

Here, the record reflects no evidence that Meyer improperly asserted or omitted material facts in the affidavit of probable cause. The record shows that Meyer did not initiate the proceedings against Manivannan without probable cause, as required for a malicious prosecution claim. Accordingly, we will grant Meyer's

18

motion for summary judgment as to Manivannan's § 1983 malicious prosecution claim.

McGoron also argues that she is entitled to summary judgment on Mannivannan's § 1983 malicious prosecution claim. *Doc. 133* at 28–30. Specifically, McGoron argues that she is immune from such claim. *Id.* As a prosecutor McGoron is entitled to prosecutorial immunity where she decides to bring criminal charges, "whether [s]he has probable cause or not." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993). Moreover, here, as described above, there was probable cause to bring the criminal charges in question against Manivannan. We will also, therefore, grant McGoron's motion for summary judgment as to the § 1983 malicious prosecution claim against her.

### D.  Defendants Meyer and McGoron are Entitled to Summary Judgment on Manivannan's § 1983 Conspiracy Claims.

Meyer and McGoron each argue that they are entitled to summary judgment on Manivannan's federal conspiracy claims because, among other reasons, there is no evidence of an agreement between them and any other person to deprive Manivannan of his constitutional rights. *Doc. 129* at 34–35; *doc. 133* at 27. "The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive

19

him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)).  Here, there is no evidence of an agreement as required to sustain § 1983 conspiracy claims.  Instead, the evidence shows only appropriate communication between investigators, witnesses, victims, and prosecutors regarding charges supported by probable cause.  Accordingly, we will grant Meyer's and McGoron's motions for summary judgment as to the § 1983 conspiracy claims against them.

### E.  Defendants Meyer and McGoron are Entitled to Summary Judgment on Manivannan's State Law Claims.

Meyer and McGoron each argue that they are entitled to immunity under the Political Subdivision Tort Claims Act ("PSTCA") from Manivannan's state law claims, and, accordingly, summary judgment is appropriate. *Doc. 129* at 35; *doc. 133* at 35–37.  The PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541.  The PSTCA applies to McGoron as a county assistant district attorney and to Meyer as a campus police officer. *Cf* 42 Pa. C.S. §8545 ("An employee of a local agency is liable for civil damages on

account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."); *see also* 71 P.S. § 646.1(a)(5) ("Campus police shall have the power and their duty shall be[] . . . to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipalities wherein the college or university is located"); *see also* 71 P.S. § 646.1(b) ("the campus police of the college or university shall have the same powers, immunities and benefits granted to police officers"); *see also Doe v. East Stroudsburg Univ. of Pa.*, No. 3:22-CV-01690, 2023 WL 7548-28, *6 (M.D. Pa. Nov. 13, 2023) (finding that employees of a public state university were entitled to PSTCA immunity).

The PSTCA does not, however, provide immunity "[i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct[.]" 42 Pa. C.S. § 8550.  "The Pennsylvania Supreme Court defined willful misconduct, for the purposes of tort claims, to mean 'that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue.'" *Fleck v. Trustees of Univ. of Pa.*, 995 F. Supp. 2d 390, 412 (E.D. Pa. 2014) (quoting *Evans v. Phila. Transp. Co.*,

21

418 Pa. 567, 212 A.2d 440, 443 (1965)).  Here, there is no evidence provided which supports the conclusion that Meyer or McGoron acted with malice or committed willful misconduct. *See doc. 128*.  Accordingly, Meyer and McGoron are entitled to immunity pursuant to the PSTCA and we will grant them summary judgment on the state-law claims on this basis.

### F.  Defendants Beck and Mishra are Entitled to Summary Judgment on Manivannan's State Law Malicious Prosecution Claims.

Beck and Mishra jointly argue that they are entitled to summary judgment on Manivannan's state law malicious prosecution claims because, among other reasons, they did not "institute" the proceedings against Manivannan. *Doc. 137* at 7.  "Under Pennsylvania law, . . . a plaintiff must prove that the defendant (1) instituted the proceedings (2) without probable cause and (3) with actual malice and (4) that the proceedings terminated in favor of the plaintiff." *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 463 (3d Cir. 1993) (overturned in part) (citing *Kelley v. General Teamsters, Local Union 249*, 518 Pa. 517, 544 A.2d 940, 941 (1988)). According to the Third Circuit,

> Pennsylvania courts have considered a defendant's responsibility for the initiation of proceedings element of malicious prosecution by referring to section 653, comment g of the Restatement (Second) of Torts. *See Campbell v. Yellow Cab Co.,* 137 F.2d 918, 921 (3d Cir.1943); *Davis v. Equibank,* 412 Pa.Super. 390, 603 A.2d 637, 640 (Ct.1992); *Hess v. County of Lancaster,* 100 Pa.Cmwlth. 316,

22

514 A.2d 681, 683 (1986). Comment g distinguishes between situations in which a private individual files a complaint or demands a prosecution and those in which he merely provides information to the police. Comment g makes clear that in the latter case a private individual who does not knowingly provide false information is not responsible for the institution of the proceedings, and thus cannot be held liable for malicious prosecution as he need not have had a reasonable basis for making the accusation. *See also Campbell v. Yellow Cab Co.,* 137 F.2d at 921 (holding person who merely identifies suspect and "does not otherwise attempt to influence the officers in the exercise of their discretion as to the prosecution of the person identified [if] the person making the identification believes it to be correct ... is not deemed the instigator of criminal proceedings subsequently begun by the police ..."); *Davis v. Equibank,* 603 A.2d at 640 (refusing to permit imposition of liability on witness for negligent misidentification of robbery suspect).

*Id.* at 464 (footnote omitted). Here, the record does not show that Mishra or Beck filed a complaint against Manivannan or demanded his prosecution. Instead, it shows that they provided information to the campus police. And the record also does not show that Mishra or Beck provided any information which they knew to be false. Accordingly, we will grant Mishra and Beck's motion for summary judgment insofar as it seeks summary judgment on Manivannan's malicious prosecution claims.

**G. Defendants Beck and Mishra are Entitled to Summary Judgment on Manivannan's State Law Conspiracy Claims.**

Beck and Mishra jointly argue that they are entitled to summary judgment on Manivannan's state law conspiracy claims because "[t]he record is devoid of evidence that Defendants acted with a common purpose to do an unlawful act." *Doc. 137* at 10.  Moreover, Beck and Mishra argue that Manivannan's "failure to meet his burden of proof on the malicious prosecution claim defeats the civil conspiracy claim as there is no underlying tort." *Id.* at 10–11.  Under Pennsylvania law, a civil conspiracy can only prevail where the following elements are proven: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Humphries v. Barber*, No. 4:20-CV-00064, 2024 WL 290269, *7 (M.D. Pa. Jan. 25, 2024) (quoting *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000)).  There is no evidence in the record before us that either Beck or Mishra had a common purpose with anyone else to do an unlawful act or otherwise act unlawfully.  Accordingly, we will grant Beck and Mishra's motion for summary judgment as to Manivannan's state law claim for conspiracy.

## VI.  Conclusion.

For the reasons discussed above, Meyer's motion for summary judgment (*doc. 127*), McGoron's motion for summary judgment (*doc. 132*), and Beck and

24

25

Mishra's motion for summary judgment (*doc. 136*) are granted.  An appropriate

order follows.

**<u>S/Susan E. Schwab</u>**
Susan E. Schwab
United States Magistrate Judge

25